IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUNG TRAN                        :        CIVIL ACTION
                                 :
          v.                     :
                                 :
DELAVAU LLC, et al.              :        NO. 07-3550

MEMORANDUM

Bartle, C.J.                                    May 18, 2009

        Plaintiff, Sung Tran, an Asian-Cambodian, brings this
action against defendant, Delavau LLC ("Delavau"), his former
employer, and Alma Dickerson, individually and in her official
capacity as the Human Relations Director at Delavau.  Tran
alleges in the counts remaining that he was discharged from his
job in violation of Title VII of the Civil Rights Act of 1967, 42
U.S.C. § 2000e, et seq. (Count II), the Pennsylvania Human
Relations Act ("PHRA"), 43 PA. CON. STAT. § 951, et seq. (Count
III), and 42 U.S.C. § 1981 (Count IX).[1]

_____

1.  The court previously granted motions to dismiss Counts I, IV,
V, VII, and VIII of the amended complaint.  It did not include a
Count VI.
        On May 13, 2008, we granted the motion of defendants, Local
169 and Andrew Montella, to dismiss the counts of the amended
complaint asserted against them.  We also granted the motion of
Delavau to dismiss the amended complaint with respect to (1)
Count II for retaliation in violation of Title VII of the Civil
Rights Act to the extent it was based on claims of demotion or
hostile work environment; (2) Count III for violation of the
Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, to
the extent it was based on claims of a hostile work environment;
and (3) Count IX insofar as it sought to bring claims under 42
                                        (continued...)

Now pending before the court is the motion of Delavau and Alma Dickerson for summary judgment on these counts.

I.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id. After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

The following facts are either undisputed or viewed in the light most favorable to the plaintiff.

Delavau is a contract manufacturer and packager for the pharmaceutical, food and nutritional industries. Dickerson Decl. ¶ 3. It operates through the following seven production

---

1.(...continued)
U.S.C. §§ 1982, 1985(3) and 1986.  Finally, we granted the motion of Alma Dickerson to dismiss Count IX insofar as it sought to bring claims under 42 U.S.C. §§ 1982, 1985(3) and 1986.

departments:  granulation, chemical weighing, blending, compression, coating, sorting and packaging.  Id.  Delavau's maintenance department is responsible for the maintenance, repair and installation of production machinery in each of the seven production departments.  Id.  The machinery found in each production department varies and, therefore, the skills and knowledge necessary to support each production department is unique to that department.  Id.  Maintenance department employees are assigned to support two or more production departments with similar machinery.  Id.  The maintenance department is organized into three teams, and there is "very little interchange" among the employees of the separate teams.  Id.  One team supports the granulation, chemical weighing, and blending departments, another team supports the compression and coating departments and the final team supports the packaging and sorting departments.  Id.

Maintenance employees are assigned to one of the following four classifications depending on their training, knowledge and skill:  Mechanic B, Mechanic A, Intermediate Engineering Technician, and Master Engineering Technician.  Id. at ¶ 4.  Those employees classified as a Mechanic B have the least training, knowledge and skill, while those classified as a Master Engineering Technician have the most training, knowledge and skill.  Id.  There are a range of wages within each classification or tier.  Id.  Employees within a tier or classification are compensated, within the range for that tier or classification, according to their skill, knowledge, training or

-3-

qualification to perform the work.  <u>Id.</u>  Delavau "places great emphasis on training" and requires their employees to document the training relevant to their team's mission.  <u>Id.</u>  An employee's seniority is not a factor in his wage.

   Warehouse Employees' Union Local 169 ("Local 169"). represents Delavau's production employees and those employees classified as Mechanic B and Mechanic A for collective bargaining purposes.  <u>Id.</u> at ¶ 5.  Employees are permitted, under the Collective Bargaining Agreement, to protest employment actions by filing "grievances."  <u>Id.</u>  Alma Dickerson, Delavau's Human Relations Director, manages the investigation and resolution of all grievances on behalf of Delavau.  <u>Id.</u>

Tran began working at Delavau on September 28, 1998 as a machine operator in the compression department.  Compl. ¶ 11. In July of 1999, he was promoted to operator foreman and in 2002, to Mechanic B in the compression and coating departments.

In February, 2002, while employed as a Mechanic B supporting the compression and coating departments, he filed a grievance under the Collective Bargaining Agreement because he believes he was "being discriminated against because of not getting equal pay as fellow worker for same job classification." Dickerson Decl., ¶ 6.  According to Ms. Dickerson's investigation of this grievance, the fellow worker referenced in Tran's grievance was Maurice Bigelow, a Mechanic A.  <u>Id.</u>  He was earning $13.00 an hour and $1.80 per hour more than Tran, a Mechanic B, because he was working in a more skilled position.  <u>Id.</u>  The two

-4-

men also worked in different departments.  Id.  Bigelow was
supporting the granulation, chemical weighing and blending
departments, while Tran was supporting the compression and
coating departments.  Id.  Furthermore, Bigelow had HVAC
certification and training.  Id.  Dickerson denied Tran's
grievance.  Id.[2]

An incident occurred in July, 2002 involving Tran, his
production supervisor, Duc Lam, and their wives.  Tran brought an
answering machine into work to play a message left for him by Mr.
Lam's wife in which she called Tran "honey."  Compl., ¶ 27; Ex. 3
to Delavau Mot. for Summ. J., Oct. 29, 2008 Tran Dep. Tr. ("Ex.
3"), p. 64.  Tran wanted a co-worker to verify that the message
was left by Mr. Lam's wife.  Id.  Tran played the message for Mr.
Hungpham, a production supervisor, who confirmed it was Duc Lam's
wife.  Id.  Thus, Tran confronted Duc Lam and told him "You try
to destroy my marriage the way you do."  Id. at 65.  Tran
demanded that Duc Lam's wife apologize to his wife about the
message and a physical altercation nearly erupted between the two
men.  Id.  Tran received an "Employee Warning Notice" on July 11,

2.  The plaintiff argues at page 4 of his Opposition that Maurice
Bigelow was a non-Asian Class B Mechanic at this time and Tran
was a Class A Mechanic.  In support of this factual allegation,
he cites page 58 of Exhibit C, the deposition transcript of Alma
Dickerson.  However, Ms. Dickerson testifies on this page of the
transcript that she believes Bigelow was a Class A Mechanic.
Furthermore, the Grievance Form dated February, 2002 states that
the plaintiff was a Mechanic B at this time and had not completed
the necessary requirements to move to a Mechanic A level.

2002 in connection with this incident and was suspended from work for three days as a result.  Id. at 67.

In August, 2002, Tran was promoted to Mechanic A and he remained in the compression and coating department.  Compl. ¶ 19. Eight months later, on October 21, 2002, Tran filed an employment discrimination and retaliation claim with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").  He alleged that he was suspended from work for three days in retaliation for filing a grievance in February, 2002.

In Count II of this claim, Tran asserted he was being discriminated against and was being paid less than Delavau mechanics, Alfonso Simmons, Craig Christmas, and Maurice Bigelow. By this point, Tran's hourly rate had increased to $13.20 per hour.  Dickerson Decl., ¶ 7.  According to Tran's claim, Craig Christmas and Maurice Bigelow, both African American, were earning $13.00 an hour.  Simmons was earning $15.00 an hour and was employed as a Mechanic A from July 29, 2002 through September 9, 2002 in the granulation, chemical weighing, and blending departments.  Id.  According to Ms. Dickerson, Delavau valued Simmons' certification as an electrician.  Id.  This certification allowed Delavau to utilize him in all seven departments in connection with electrical issues.  Id.

In April, 2004, a meeting was held in which Tran, Dickerson and Ron Dukes, Tran's supervision, met to discuss Tran's position within Delavau.  Id.  Tran was, at this point,

-6-

working as a Mechanic A in the compression and coating departments and was seeking a promotion. Ex. 3, p. 48. In this meeting, Tran was told he needed additional training and certification in hydraulics and pneumatics in order to be promoted to an Intermediate Engineering Technician. Dickerson Decl., ¶ 7. The job qualifications for an Engineering Technician in the compression and coating departments include a basic knowledge of hydraulics and pneumatics, controls logic and basic testing with certification. At the meeting, Dickerson offered Tran a temporary promotion to Intermediate Engineering Technician provided he agree to take the required training. Id.; Ex. 3, p. 50. Tran refused both the offer and the required training. Dickerson Decl., ¶ 7. A month later, in May 2004, Tran filed a grievance asserting he was misclassified as a Mechanic A and should be promoted to an Intermediate Engineering Technician. Id.

A copy of a Grievance Form submitted to Local 169 by Tran on May 20, 2004 states in full:

> SHIFT AND I AM ON NIGHT BY MYSELF. MY
> SUPERVISOR TREATS ME DIFFERENT THAN MY WHITE
> CO-WORKERS. AND I HAVE BEEN DOING WHAT EVER
> MY SUPERVISOR TELL ME TO DO TO KEEP THE
> PEACE. I KNOW I AM QUALIFIED TO DO THIS JOB
> AND MOVE THE COMPANY FORWARD IN MY BEST
> EFFORTS. PLEASE UNDERSTAND THAT ALL I WANT
> IS EQUAL RESPECT AND OPPORTUNITY.

At his deposition, Tran explained that he had to work by himself during the night without help or supervision, while two white co-workers were permitted to work the day shift. Ex.

3, p. 17.  Tran had been working the night shift with Vinny Doung, an Asian employee.  However, Doung was terminated on April 23, 2004.  Dickerson Decl. ¶ 9;  Ex. 3, p. 30.  After Doung's termination, Tran was responsible for completing his job duties as well.  Ex. 3, p. 17.  Dickerson explained to Tran that Delavau currently had no employees to assign to the night shift with Tran.  Dickerson Decl. ¶ 9.  However, she further explained that on April 23, 2004, Kenneth Potts, an Intermediate Engineering Technician, was being transferred from the packaging and sorting departments to the compression and coating departments to replace Doung.  Id.  Potts was required to undergo three months of training, which occurred during the day, prior to undertaking his new position in the compression and coating departments.  On August 3, 2004, Potts was assigned to the night shift with Tran.  Id.  Tran testified at his deposition that he believes he had to work by himself at night because Delavau wanted to give him a "hard time" in retaliation for his claims of discrimination.  Ex. 3, p. 19. He further testified that he believes he was forced to work the night shift by himself because of his race.  Id. at 25.

        In July, 2004, Tran was asked by an operator to repair a machine, which had been running.  Tran found it to be dirty. Id. at 20.  Before performing the repairs, Tran reported the dirty condition of the machine to Fnu Suhendri, a production supervisor.  Id. at 20-21.  Tran stated he made this report because it was Delavau's policy that "everything had to be

-8-

cleaned." Id. at 22.  Suhendri told Tran that if he didn't want
to do the job, then "don't do it." Id. at 20.  Tran proceeded to
report Suhdendri to the plant manager, Jeff Hartman. Id.
Hartman told Tran that he "don't care." Id.  Tran filed a
Grievance Form with Local 169 in connection with this incident.
It states:

> I AM A NIGHT SHIFT MECHANIC AT DELAVAU/LLC.
> ON 7/12/04 I HAVE A PROBLEM WITH THE
> COMPRESSION DEPT, SUPERVISOR FNU SUHENDRI.
> HE GOT MAD BECAUSE I TELL HIM THE MACHINE
> THAT HE WANTS ME TO RETOOL IS VERY DIRTY AND
> IT CAN BE CROSS CONTAMINATION TO THE PRODUCT.
> IT AGAINST THE COMPANY CGMP POLICY CP-002-02.
> AND I HAVE BEEN INTIMIDATED AND HARASSED
> SEVERAL TIMES BY THIS SUPERVISOR.  I REPORT
> THE PROBLEM TO THE NIGHT SHIFT PLANT MANAGER
> JEFF HARTMAN.  AND HE JUST DOESN'T CARE.  I
> FEEL THAT I AM BEEN RETALIATED AND
> DISCRIMINATED BY THE COMPANY MANAGEMENT FOR
> FILING THE UNION GRIEVANCE AGAINST THE
> COMPANY ON 5/20/04.

According to Ms. Dickerson, a reduction in orders in
early 2005 necessitated a reduction in compression and coating
operations.  Dickerson Decl. ¶ 10.  An email circulated on
March 7, 2005 by Terry Hussie addressing "Scheduled hours
Compression," states, in pertinent part:

> Unless new orders come in, we could be in
> trouble in 2/3 weeks.  We are going to cut
> compression back to 4 days, 24 hours.  This
> stretches the work into 3 full weeks.  If at
> the end of the week we don't see a big influx
> of new business we'll cut back to four 10
> hour shifts.  We won't fill any vacant
> positions, we will move people internally to
> fill critical openings.

Ms. Dickerson asserts that Delavau initially terminated
temporary employees assigned to the compression and coating

-9-

departments and reduced the hours of the departments' operators.
Id.  The reduction in machine usage allowed for a reduction in
the number of maintenance department employees assigned to these
departments.  Id.  Thus, the production manager instructed Tran's
supervisor, Ron Dukes, to reduce his head count.  Id.  Tran was
selected for lay-off because he was the least-skilled maintenance
department employee in the compression and coating departments.
On March 30, 2005, Tran was terminated.  Id.

On April 4, 2005, an email addressing the "Slow Period
Drill" was circulated.  Terry Hussie wrote the following:

- We should release temps this week,
  backfilling with perms wherever
  possible.
- All overtime activity should cease.
- Any employee willing to take a voluntary
  leave should be permitted to do so.

After his lay-off, Tran asked to be transferred to the
Compression Department as an operator.  Id. at ¶ 11.  Dickerson
informed him that there were no current openings.  She further
explained that the Collective Bargaining Agreement with Local 169
did not require the "bumping" of a junior employee out of his/her
job.  Subsequent openings were posted internally.  Id.

On April 13, 2005, Tran filed a second employment
discrimination claim with the PHRC, Charge No. 200406937, and the
EEOC, Charge No. 17-2005-62092, asserting he was laid-off because
of the employment discrimination charges he asserted in 2002.

III.

-10-

Delavau moves for summary judgment with respect to Count II of the Amended Complaint for retaliation in violation of Title VII of the Civil Rights Act.  Pursuant to 42 U.S.C. § 2000e-3(a):

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that:  (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.  Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

With respect to the first element, our Court of Appeals has stated that "we do no require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct'." Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995).  Protected activity may also include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination

-11-

by industry or society in general, and expressing support of co-workers who have filed formal charges." Id.  Here, Tran did make a formal charge of employment discrimination and retaliation to the EEOC in October, 2002.  Both parties correctly agree that the October, 2002 charge is "protected conduct."  Delavau argues that "Tran engaged in no protected activity prior to the 2002 Charge." See Delavau Mot. for Summ. J., p. 15.  Tran counters that he engaged in "protected activity in October, 2002, when he filed a formal Charge of Discrimination with the EEOC and PHRC alleging race discrimination and retaliation." See Pl.'s Opp'n, p. 19.

Delavau asserts that Tran's February, 2002 grievance does not constitute "protected employee activity" because it does not oppose a practice made an unlawful employment practice by Title VII.  In response, Tran does not argue otherwise.  Instead, he points to the October, 2002 charge as his protected activity, as well as the grievances he filed in July, 2004 and May, 2004. Accordingly, we agree that the protected activity pertinent to Tran's claims of retaliation in violation of Title VII include the October, 2002 charge and the grievances in July, 2004 and May, 2004, both of which reference discrimination and retaliation.

Both parties agree that Tran's termination in March, 2005 constitutes adverse employment action.  See Delavau Mot. for Summ. J., p. 18; Pl.'s Opp'n, p. 20.  Delavau argues that Tran's assignment to work alone on the night shift and his supervisor's criticisms do not constitute adverse employment actions.  The

-12-

plaintiff does not dispute or otherwise respond to these arguments and we, therefore, presume he concedes these actions do rise to the level of adverse employment actions.  Accordingly, the sole adverse employment action at issue in connection with Tran's prima facie case of retaliation is his termination in March, 2005.  Abramson v. William Paterson College of N. Jersey, 206 F.3d 265, 288 (3d Cir. 2001).

        For the final element of the prima facie case, Tran must show that there is a causal connection between his October, 2002 charge and his grievances in May and July, 2004 with his termination in March, 2005.  Almost two and a half years separates the protected activity in October, 2002 and Tran's termination, and eight months passed after the grievances in July, 2004 and his termination.  It is clear the temporal proximity at issue here is not "unusually suggestive" of causation.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  However, our Court of Appeals has made it clear that the "mere passage of time is not legally conclusive proof against retaliation."  Robinson v. Southeastern Pennsylvania Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  It further explained that where the "time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic

conduct or animus against the employee[.]" <u>Marra v. Philadelphia</u>
<u>Hous. Auth.</u>, 497 F.3d 286, 302 (3d Cir. 2007).

Here, Tran alleges that Delavau engaged in a pattern of
antagonism toward him as a result of his complaints of
discrimination and retaliation.  He specifically points to
demeaning comments made by his supervisor, Ron Dukes, as well as
Delavau's denial of his request to transfer from the night shift
to the day shift.  Mr. Dukes selected Tran for the lay-off in
2005.  Tran testified at his deposition that Dukes yelled at him
for applying to transfer to the day shift.  <u>See</u> Ex. 3, p. 124.
Dukes allegedly told Tran he should be fired for asking to
transfer.  <u>Id.</u>  Tran asserts that non-Asian employees in the
compression department were permitted to transfer to the day
shift.  Making all reasonable inferences from the evidence in the
light most favorable to the plaintiff, we hold there are genuine
issues of material fact with respect to this element of Tran's
prima facie case of retaliation in violation of Title VII.
Accordingly, we will deny the motion of Delavau for summary
judgment with respect to Count II.

IV.

Delavau also moves for summary judgment with respect to
Counts III and IX, which assert claims of disparate treatment and
termination in violation of the PHRA and 42 U.S.C. § 1981.
Section 1981 provides:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and enforce

-14-

> contracts, to sue, be parties, give evidence,
> and to the full and equal benefit of all laws
> and proceedings for the security of persons
> and property as is enjoyed by white citizens,
> and shall be subject to like punishment,
> pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Claims of disparate treatment under § 1981 and the PHRA are analyzed under the burden shifting framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  <u>Jones v. Sch. Dist. of Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999).  Under this analysis, Tran must first establish a prima facie case of disparate treatment and termination by showing:  (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was fired from that position; and (4) the circumstances of the termination give rise to an inference of unlawful discrimination.  <u>Id.</u>

It is clear that Tran, an Asian Cambodian, is a member of a protected class, was qualified for the position he held for several years, and was fired from that position.  Delavau and Tran dispute whether the circumstances of the termination give rise to an inference of unlawful discrimination.

Delavau argues that Tran cannot establish disparate treatment in violation of § 1981 and the PHRC with regard to: (1) his claim of being paid less than other employees; and (2) the denial of his request for a promotion.  Tran does not argue that these instances give rise to an inference of unlawful discrimination and, therefore, we assume he concedes they do not.

Instead Tran argues Delavau treated similarly-situated employees differently than it treated him.  Specifically, he claims that his request to transfer to the day shift was denied, but that of Kenneth Potts, a Caucasian employee, was granted.  We first note that Tran fails to cite any record evidence in support of this factual allegation.  The court's independent review of the deposition of Kenneth Potts revealed that Mr. Potts was hired as an Intermediate Engineering Technician.  See Dep. Tr. of Kenneth Potts, p. 10.  According to Ms. Dickerson's Declaration, an Intermediate Engineering Technician is a position that requires more skill than a Mechanic A.  Thus, Mr. Potts is not a similarly-situated employee and his transfer to the day shift does not create an inference of discrimination.

Tran further asserts that his termination gives rise to such an inference because he was the only employee out of more than 250 employees to be laid off in March, 2005.  He stresses that the emails addressing the alleged slowdown in workload do not mention layoffs but instead direct that overtime activity cease and "temps" be released.  See Apr. 4, 2005 email from Terry Hussie.  He further notes that John Kapcia transferred into the compression department at the same time he was laid-off.  Once again, Tran fails to cite to any record evidence to support this factual allegation.  The court's independent review of the deposition transcript of Mr. Kapcia reveals he was an engineering technician, and this is confirmed by Dickerson's Declaration. See Dep. Tr. of John Kapcia, p. 7; Dickerson Decl. ¶ 10.  Once

-16-

again, Tran cannot compare himself to an engineering technician because that is a different position that requires greater skill, knowledge, and certification.  Consequently, Mr. Potts' transfer into the compression department at the time that Mr. Tran was laid-off does not give rise to an inference of discrimination because these individuals held different jobs, performed different skills, and possessed different knowledge.

Finally, Tran stresses that John Wahl and John Fuss, both Caucasian, were hired by the compression department within months of his lay-off.  Once again, no record cite is provided for this factual allegation.  According to the deposition testimony of Dickerson, John Wahl and John Fuss were hired as intermediate technicians.  See Dep. Tr. of Dickerson, p. 66.  No Class A Mechanics have been hired or promoted since 2002.  Id.

The record reveals that Tran was selected for lay-off at a time when Delavau was experiencing a decline in orders that required compression and coating operations.  Tran's supervisor, Ron Dukes, selected Tran, a Mechanic A, for the lay-off because he was least skilled employee in the compression and coating departments.  See Dickerson Decl. ¶ 10.

Given the plaintiff's failure to come forward with evidence supporting an inference of discrimination surrounding his termination, we will grant the motion of Delavau for summary judgment with respect to Tran's claims of disparate treatment and termination as asserted in Count III for violation of the PHRA, and Count IX for violation of 42 U.S.C. § 1981.  We will also

-17-

grant, for the same reason, the motion of Dickerson for summary
judgment with respect to Count IX of the Amended Complaint, which
asserts a discrimination claim under 42 U.S.C. § 1981.